UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE VIRGIN OFFSHORE USA, INC. | CIVIL ACTION<br><br>NO: 13-79<br><br>SECTION: "J"(1) |

### ORDER AND REASONS

Before the Court is TGS-NOPEC Geophysical Company, L.P. ("TGSN")'s **Appeal of the Bankruptcy Court's Order entered on November 20, 2012 authorizing the assumption of a certain Master License Agreement for Geophysical Data pursuant to 11 U.S.C. § 365 (Rec. Doc. 1).** The Court, having considered the parties' briefs, the record, and the applicable law, finds that the Bankruptcy Court's Order should be **AFFIRMED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On January 16, 2003, several years before the instant bankruptcy proceeding commenced, TGSN granted to Virgin Offshore

1

USA, Inc. ("Virgin Offshore" or "Debtor") a non-exclusive license ("TGSN License" or "License") to use certain (1) geophysical and geological data resulting from seismic surveys performed by or on behalf of TGSN, (2) TGSN's interpretations of any generated data, and (3) results of any processing, reprocessing, and re-display of such data and/or interpretations (collectively, "Seismic Material"). Virgin Offshore paid consideration for this License and was thereby permitted access to Seismic Material that related to lands covered by a specific mineral lease.[1] The consideration paid was a one-time payment for full use of the Seismic Material for the full term of the agreement.

On September 16, 2011, Precision Drilling Company, LP, Dynamic Energy Services, LLC, and Tanner Services, LLC filed an involuntary Chapter 11 bankruptcy petition against Virgin Offshore, and Virgin Offshore consented to entry of the Order for Relief. Virgin Offshore moved to appoint a Chapter 11 Trustee on October 6, 2011 and Gerald H. Schiff was appointed as Trustee of the Estate on October 14, 2011 ("Schiff" or "Trustee").

The Trustee moved to assume the TGSN License on October 23, 2012, and Whistler Energy, Plan Trustee for Virgin Oil Company,

---

[1] Virgin Offshore was given access to Seismic Material for lands covered by the following mineral lease: Oil and Gas Lease of Submerged Land under the Outer Continental Shelf Lands Act dated effective July 1, 1997, covering Ship Shoal 153 and designated OCS-G 18011.

Inc. ("Plan Trust") filed a Joinder in the Trustee's motion. TGSN opposed the motion, and a hearing was held on November 15, 2012, at which time the Bankruptcy Judge approved the Trustee's assumption of the TGSN license. TGSN filed a Notice of Appeal regarding the Assumption Order and a Motion to Stay Pending the Appeal[2] on November 27, 2012. Appellant submitted its brief on January 30, 2013, Appellees submitted their briefs[3] on February 14, 2013, and Appellant submitted a reply on February 27, 2013. (Rec. Docs. 3, 6, 7)

## THE PARTIES' ARGUMENTS

TGSN asserts four issues on appeal: (1) whether the Bankruptcy Court erred in finding and concluding that the Chapter 11 Trustee for Virgin Offshore is entitled to assume the TGSN License under 11 U.S.C. § 365(a) and (c), (2) whether the Bankruptcy Court erred in finding and concluding that registration with the Copyright Office is required to prohibit the assignment of a non-exclusive license of copyright rights under federal copyright law, (3) whether the TGSN License is a

---

[2] The Bankruptcy Court denied the Motion to Stay, finding that TGSN did not identify any law that would operate to bar an assignment of the License, and that, even if such law did exist, this is an assumption and, under an "acutal test," 11 U.S.C § 365(c) does not prohibit an assumption even if an assignment is barred. In re Virgin Offshore USA, Inc., No. 11-13028, 2012 WL 6059359 (Bankr. E.D. La., Dec. 6, 2012).

[3] The Plan Trust submitted an Appellee's brief adopting the Trustee's brief. (Rec. Doc. 7)

3

copyright license under federal copyright law, and (4) whether the Seismic Material licensed by the TGSN License is copyrightable under federal copyright law. The Trustee adopted these issues, with the exception of the second issue because he felt it mischaracterized the Bankruptcy Court's findings. The Trustee argues that the Bankruptcy Court merely noted that TGSN had not registered a copyright over the Seismic Material as reinforcement for its finding that TGSN did not take any steps to treat the Seismic Material as copyrighted data.

## LEGAL STANDARD

For a bankruptcy appeal, the applicable standard of review by a district court is the same as when the Court of Appeals reviews a district court proceeding. 28 U.S.C. § 158(c). Findings of fact by the bankruptcy courts are to be reviewed under the clearly erroneous standard. In re Killebrew, 888 F.2d 1516, 1519 (5th Cir. 1989). Conclusions of law are reviewed *de novo*. In re Kennard, 970 F.2d 455 (5th Cir. 1991). Mixed questions of fact and law are also reviewed *de novo*. In re Bowyer, 916 F.2d 1056 (5th Cir. 1990).

## DISCUSSION

TGSN asks the Court to reverse the Bankruptcy Court's Order allowing the Trustee to assume the License over Seismic Material

that TGSN granted to the Debtor in 2003. In making this request, TGSN asks the Court to make several large leaps within the current state of the law. The crux of TGSN's argument is that 11 U.S.C. § 365(c) prohibits the assumption of the License by the Trustee. 11 U.S.C. § 365(c) states, in pertinent part:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment

11 U.S.C. § 365(c). To find that this provision bars the present assumption, the Court will have to find that (1) the License is an executory contract, (2) some non-bankruptcy law applies, (3) such applicable law bars assignment, (4) because the applicable law bars assignment, any assumption is also barred, and (5) TGSN does not consent to the assumption of the License. Upon a *de novo* review[4] of the Bankruptcy Court's Order, the Court finds that all

---

[4] As the issues presented are question of law or mixed questions of law and fact, the Court will review the Bankruptcy Court's Order *de novo*.

5

of the foregoing conditions are not met; therefore, the Order of the Bankruptcy Court must be affirmed.

**A. Is the License an Executory Contract?**

In its brief, the Trustee asserts that the License is not an executory contract because TGSN granted Virgin Offshore the right to use its Seismic Material based on a one-time fee. The Trustee contends that because Virgin Offshore's duty to perform was extinguished by its payment of the one time fee, the contract is not executory. He further points out that, to avoid paying certain taxes, TGSN itself successfully argued to the Texas Supreme Court that the License agreement was really just a sale of use. See TGS-NOPEC Geophysical Co. v. Combs, 340 S.W.3d. 432 (Tx. 2011). The Trustee admits, however, that he never made this argument during proceedings in the Bankruptcy Court, nor did he include it in his Statement of the Issues. Thus, TGSN argues that this argument is waived. Even if the argument is not waived, TGSN asserts the License is an executory contract because performance is still owed by both sides. Specifically, TGSN has an ongoing performance obligation to refrain from suing Virgin Offshore for using its material, and Virgin Offshore has an ongoing duty not to breach confidentiality. TGSN points out that several courts have held that such licenses are executory contracts.

6

It is unclear whether an appellee, who has no duty to submit a Statement of the Issues under the Bankruptcy Code, waives an argument by not raising it prior to the submission of his brief. See Fed. R. Bankr. P. 8006. However, the Court finds that this issue need not be dealt with because (a) § 365(c) will not apply for other reasons discussed below, and (b) there is considerable support for finding that licenses such as the one at issue are executory contracts, and the Court finds this support persuasive. See In re Sunterra Corp., 361 F.3d 257, 264 (4th Cir. 2004) (under the Countryman standard, which has been adopted by the Fifth Circuit, software license agreement was an executory contract because the parties "possessed an ongoing obligation to maintain the confidentiality of the source code.")

**B. Does Some Non-Bankruptcy Law Apply?**

TGSN contends that the non-bankruptcy law that applies in this matter is federal copyright law. It argues that, though raw data is not copyrightable, "the selection, coordination and arrangement" of such data is copyrightable. TGSN urges the Court to consider its Seismic Material as something akin to a map or photograph, which are copyrightable because the author makes original decisions in creating the product. TGSN argues that the Seismic Material is dataset that represents the Earth's internal structures, which is essentially a "photograph" of cross-sections

7

of the Earth. Because TGSN had to choose the parameters to gather the data and decide how to assemble and process the data, the resulting dataset is an original expression of raw data that is copyrightable. The Trustee, on the other hand, opposes this position, noting that the Seismic Material at issue is nothing but uncopyrighable raw data, and that TGSN does not provide any legal support for its argument.

While TGSN's copyright argument has never been directly refuted by a court, it is at odds with opinions from several jurisdictions, including the Fifth Circuit, which have traditionally treated seismic data as trade secrets.[5] See, Musser Davis Land Co. v. Union Pacific Resources, 201 F.3d 561, 569-70 (5th Cir. 2001); see also Mayne & Mertz, Inc. v. Quest Exploration LLC, No. 06-800, 2006 WL 3797194 (W.D. La., Dec. 5, 2006) (seismic "data appears to meet the statutory definition of trade secret information."); see also, Anadarko Petroleum Corp. v. Davis, No. 06-2849, 2006 WL 3837518, *15 (S.D. Tx., Dec. 28, 2006); see also, In re Bass, 113 S.W.3d 735, 740 (Tex. 2003) (compiling cases from other jurisdictions that found that seismic data is a trade secret); see also, Sprint Corp. v. C. I. R., 108

---

[5] To the Court's knowledge, no court has ever found that seismic data is copyrightable.

8

T.C. 384, 406 (1997) (dissent) (In dicta, a dissenting judge stated that seismic data is a recording of "a natural phenomenon [that] is the result of human exertion, it is neither the expression of an idea nor an un-obvious improvement of prior technology or art. Accordingly, copyright or patent protection is not available for it.") Though there is a significant lack of affirmative support for TGSN's copyright argument, there is just as significant a lack of cases refuting its position, making this a truly novel argument.

The Court respects TGSN's argument, and recognizes that novel arguments will not have support in case law; however, the Court is not convinced that the Seismic Material is afforded copyright protection based on the apparent industry-wide practice of treating such data as a trade secret. Moreover, it is clear that TGSN never intended to treat the Seismic Material as copyrightable. The License refers to the data as trade secrets. See Rec. Doc. 3-1, ¶¶ 4.1, 4.3. TGSN never registered a copyright over the data. While it is true that TGSN is not required to register its copyright, this fact is relevant in determining whether TGSN treated the data as copyrightable. See, Barris v. Hamilton, 96-9541, 1999 WL 311813 *5 (S.D.N.Y., May 17, 1999) (cumulating cases that note that registration is not a

prerequisite for copyright protection). Despite the fact that TGSN has never claimed that its seismic data is protected by copyright law, it asserts now that it is in fact copyrightable just as a photograph or map would be. Though the Court recognizes the potential of this argument, TGSN simply does not provide enough proof to allow the Court to make this leap. Further, the Court finds that § 365(c) is not applicable even if copyright law does apply, as will be discussed below.

**C. Does Copyright Law Prohibit Assignment of the License?**

The Court has already determined that copyright law does not apply in this matter, but even if it did, the inquiry would not stop there. Assuming that copyright law would apply to the instant matter, TGSN correctly states, and it is apparently well-settled, "that nonexclusive intellectual property licenses do not give rise to ownership rights and cannot, as a matter of law, be assigned without the consent of the licensor." In re Golden Books Family Entm't, Inc., 269 B.R. 300, 310 (Bankr. D. Del. 2001); In re CFLC, Inc., 174 B.R. 119 (N.D. Cal. 1994) aff'd, 89 F.3d 673 (9th Cir. 1996). The parties do not dispute that the License is non-exclusive, thus if copyright law did apply, the License would be unassignable. The fact that an assignment would be barred does not end the inquiry, however, because the transaction at issue

was an assumption of the License by the Trustee. Whether an assumption would also be barred is treated below.

**D. Does Copyright Law's Prohibition of Assignment Create a Prohibition of Assumption under 11 U.S.C. § 365(c)?**

The parties do not seem to dispute that the transfer of the License from Virgin Offshore to the Trustee is an assumption. Therefore, even if the Court found that copyright law bars assignment, such a finding would only provide TGSN the relief it desires if the prohibition of assignment translates into a bar on assumption. To make this determination under § 365(c), some courts apply a "hypothetical test" which asks, "under the applicable law, could the [non-debtor party to the contract] refuse performance from an entity other than ... the debtor in possession." Texaco Inc. v. Louisiana Land & Exploration Co., 136 B.R. 658, 669 (M.D. La. 1992)(internal citation omitted). Under this test, if the debtor "lacks hypothetical authority to assign a contract, then it may not assume it—even if the [debtor] has no *actual* intention of assigning the contract to another." N.C.P. Mktg. Grp., Inc. v. BG Star Prods., Inc., 129 S. Ct. 1577, 1577 (2009). On the other hand, some courts apply an "actual test" wherein "a Chapter 11 debtor-in-possession may assume an executory contract provided it has no actual intent to assign the contract to a third party." Id. at 1578.

Following a 1984 amendment to the language of § 365(c), a circuit split formed regarding the appropriate test to apply under § 365(c), with the First Circuit expressly adopting the actual test, and the majority of other circuits adopting the hypothetical test. Id. at 1577. The Fifth Circuit has yet to expressly adopt either test as it relates to the current version of § 365(c), and TGSN urges this Court to follow the majority of circuit courts and apply the hypothetical test. The Trustee, however, argues that the Fifth Circuit ordered courts to apply an actual test in In re Mirant. In re Mirant, 440 F.3d 238 (5th Cir. 2006).

While the Court recognizes that the hypothetical test has gained much support, it finds that Fifth Circuit jurisprudence leans towards the adoption of the actual test. See, In re Mirant, 440 F.3d at 248-49 cumulating cases, Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Coop., Inc.), 230 B.R. 693, 705 (Bankr.M.D.La. 1999); In re Lil' Things, Inc., 220 B.R. 583, 587 (Bankr.N.D.Tex. 1998); Texaco Inc. v. La. Land & Exploration Co., 136 B.R. 658, 669 (Bankr.M.D.La.1992) (concluding the West hypothetical test is incorrect for three primary reasons); In re Hartec Enters., Inc., 117 B.R. 865, 871 (Bankr. W.D. Tex. 1990) (stating that the West hypothetical test "does not fulfill the

purposes of the non-assignment statutes it seeks to enforce, creates inherent inconsistencies in the language of ... the Code, and fails to adequately account for" amendments to the Code), vacated by settlement, 130 B.R. 929 (W.D.Tex. 1991).

Though the Mirant court used the actual test in the context of § 365(e), which was not amended in the same way as § 365(c) and thus is not subject to the same circuit split, the Court nonetheless finds this decision to be an indicator of the way that the Fifth Circuit would undertake an analysis under § 365(c). Further, in In re O'Connor, the Fifth Circuit appears to have applied an actual test to determine that a partnership interest was strictly personal under Louisiana law, thus not assumable under § 365(c). The court did not expressly adopt the actual test because, regardless of the test applied, the partnership interest would have been unassumable under § 365(c); however, the language used in the opinion indicated a predilection for the actual test. Finally, other Bankruptcy courts within the Fifth Circuit's jurisdiction have expressly rejected the hypothetical test, concluding that:

> If the court were to adopt the [hypothetical test] and focus primarily upon assignability, a chapter [sic] 11 filing would have the virtual effect of rejecting executory contracts covered by section 365(f). As suggested by the court in *Texaco,* this analysis would extend section "365(c) beyond its fair meaning and

>   intended purpose, contrary to the ultimate goal of rehabilitation of the debtor's enterprise.

Cajun., 230 B.R. 693, 705 (Bankr. M.D. La. 1999) citing Texaco, Inc., 136 B.R. at 670.

Therefore, the Court finds that it should apply the actual test, meaning that the relevant inquiry is whether the Trustee had any intention of assigning the License to a third party. Because it is evident that this is not the case, the Court finds that the bankruptcy judge properly determined that the Trustee may assume the License.

**E. Did TGSN consent to the assumption?**

As discussed above, there are several complex issues involved in this matter, most of which are further muddled by either a lack of, or conflicting, authority. Though these issues have been discussed, the Court need not definitively decide any of these issues today because it finds that, even if federal copyright law applies and even if the hypothetical test is adopted, § 365(c) does not bar the Trustee's assumption of the License because the License explicitly allows the Trustee to "use" the Seismic Material. Section 365(c) does not direct courts to disregard *all* provisions in the contract, but rather to ignore *provisions that restrict or prohibit assignment*. Here,

not only does no such nonassignment provision exist, the License actually grants permission to "use" the material.  Section 365(c) only operates when the contract is silent on granting permission. Therefore, the Bankruptcy Court correctly granted the motion to assume the License.

Section 365(c) "is interpreted as prohibiting the trustee from assigning over objection a contract of the sort that applicable law makes nonassignable when the contract itself is silent about assignment." In re CFLC, Inc., 174 B.R. at 121 ("Subsection 365(f) operates to delete a nonassignability clause from a contract and render it "silent" regarding assignment, but subsection 365(c) restores the nonassignability if applicable law holds such "silent" contracts to be nonassignable.) Therefore, courts should "'simply look to see whether [applicable law would] make the duty assignable *where the contract is silent*.'" Matter of Midway Airlines, Inc., 6 F.3d 492, 495 (7th Cir. 1993) (citing In re Pioneer Ford Sales, Inc.,729 F.2d 27,29 (1st Cir. 1984)). In allowing a lease to be assigned, the Seventh Circuit pointed out that the contract did "not prohibit or restrict anything or *merely* fail to prohibit or restrict anything; instead, this language affirmatively relieves this [lease] of lease provisions otherwise applicable.  The language clearly contemplates assignment in bankruptcy[...]." Midway Airlines, 6 F.3d at 497;

see also In re Supernatural Foods, LLC, 268 B.R. 759, 792 (Bankr. M.D. La. 2001)(referring explicitly to contractual provisions that **restrict or prohibit** assignment). Similarly, the court in In re Sunterra agrees that a proassignment clause in a contract is dispositive when applying § 365(c), but only insomuch as the Debtor seeks to assign a contract. In re Sunterra Corp., 361 F.3d at 271. Strictly construing a contract, the Sunterra court held that the inclusion of a proassignment clause in the contract would indicate the parties' consent to an assignment, but did not indicate consent to an assumption of the contract. Id.

Based on In re Sunterra, it seems that the contract would have to expressly allow for an assumption to be valid. The Court finds that this is the case here. The License states that "a Related Entity shall have the same right to Use the Seismic Material as Licensee without payment to TGSN." Appellant's Brief, Exh. A Rec. Doc. 3-1, ¶ 5.3. The License further states that

> any company or other entity formed after the date of this Agreement as part of a corporate reorganization or restructuring of the Licensee or a Related Entity of the licensee and any new company or entity otherwise formed within the corporate family of the Licensee shall be deemed a Related Entity provided, that the new company or other entity is owned or controlled by the Licensee or one of its Related Entities. Except as used in Section 5.1, as used in this Agreement, "owns or controls" [...] means direct or indirect owner-ship or indirect ownership or control of one hundred percent (100%) of the Equity of such company or entity.

Appellant's Brief, Exh. A, Rec. Doc. 3-1, ¶ 5.2. Based on these sections of the License, it is clear that TGSN contemplated the situation that has arisen in this matter, but is now attempting to circumvent the contract using § 365(c). Therefore, the Court finds that the License was properly assumed and the Bankruptcy Court's Order must be affirmed.

Accordingly,

The Bankruptcy Court's **Order entered on November 20, 2012 authorizing the assumption of a certain Master License Agreement for Geophysical Data pursuant to 11 U.S.C. § 365** is **AFFIRMED**.

New Orleans, Louisiana this 10th day of September, 2013.

*[signature]*
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17